# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### 17-23961-CIV-ALTONAGA/Goodman

**MSP RECOVERY CLAIMS, SERIES LLC,**

      Plaintiff,

v.

**WESTFIELD INSURANCE COMPANY,**

      Defendant.

_____/

**MSP RECOVERY CLAIMS, SERIES
LLC and MSPA CLAIMS 1, LLC,**

      Plaintiffs,

v.

**AIG PROPERTY CASUALTY COMPANY,**

      Defendant.

_____/

**MSP RECOVERY CLAIMS, SERIES LLC,**

      Plaintiff,

v.

**AMERISURE INSURANCE COMPANY,**

      Defendant.

_____/

## PLAINTIFF'S FIRST AMENDED
## CLASS COMPLAINT FOR DAMAGES

Plaintiffs, MSP Recovery Claims, Series LLC, a Delaware entity ("MSPRC") and MSPA Claims 1, LLC, a Florida entity ("MSPA") (collectively, "Plaintiffs"), on behalf of itself and all others similarly situated, brings this action against Westfield Insurance Company, AIG Property Casualty Company, and Amerisure Insurance Company, (collectively, the "Defendants"), and states as follows:

## NATURE OF THE ACTION

1.      This action arises from Defendants' repeated failure to fulfill its statutorily-mandated duty under the Medicare Secondary Payer provisions of the Medicare Act to reimburse Plaintiffs and the putative Class Members ("Class Members") for medical treatments or expenses paid by on behalf of Medicare beneficiaries, including the representative enrollees, S.W., D.P., and K.B.[1], who were insured by Defendants' no-fault insurance policies or workmen's compensation policies when the accident occurred.

2.      Plaintiffs and the putative Class Members provided Medicare benefits to Medicare-eligible beneficiaries enrolled under the Medicare Advantage program.  Each Medicare beneficiary suffered injuries related to an accident wherein Plaintiffs and the putative Class members paid for the medical items and/or services ("accident-related expenses"). However, Defendants were ultimately responsible for paying those expenses in accordance with 42 U.S.C. § 1395y and corresponding regulations ("MSP Law").[2] Defendants' contractual obligation to provide no-fault

---

[1] In order to ensure that this document is compliant with laws and regulations under HIPAA, the name of the Medicare enrollees shall only be referred to by his or her initials.

[2] Defendants are a "primary plan" in accordance with the MSP Law. 42 U.S.C. § 1395y(b)(2)(A) (the term "primary plan" means "a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability

coverage under its insurance policy with the Medicare beneficiaries demonstrates its responsibility provide for primary payment or reimburse the Class Members.

3.      Refusal and failure to reimburse conditional payments is endemic in the insurance industry. This conduct impairs the ability of Medicare and MAOs to offer Medicare benefits to the millions of citizens who depend on them.

4.      Fortunately, Congress gave private parties, e.g., Medicare Advantage Organizations ("MAOs"), a private right of action to bring recalcitrant insurers to heel, which Plaintiffs asserts, together with common-law and equitable claims, as set forth below.

5.      Plaintiffs asserts these claims on its own behalf and on behalf of a Class of similarly-situated MAOs, first-tier entities, downstream entities, and their assignees, to recover conditional payments made on behalf of Medicare beneficiaries enrolled in Medicare Part C (the "Enrollees"), for accident-related expenses. These payments were conditional, because Defendants were, by law, the primary payers under the MSP provisions.

6.      Pursuant to the MSP provisions, Defendants are required to reimburse Class Members for payments when responsibility is demonstrated through the Defendants' no-fault or workmen's compensation policies with the Enrollees administered by the Class Members. As such, Defendants are the primary insurer and should have paid the Enrollees' accident-related medical expenses.

7.      This lawsuit seeks reimbursement for those medical expenses paid for by the Plaintiffs and the putative Class Members which should have been reimbursed by Defendants under the Medicare Act.

---

insurance policy or plan (including a self-insured plan) or no-fault insurance, to the extent that clause (ii) applies.").

8.      On behalf of itself and the Class, Plaintiffs seek: (1) double damages under the MSP Act for Defendants' failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period; and (2) reimbursement for all sums, on a fee-for-service basis, that Plaintiffs' assignors and Class Members were billed for medical care and treatment rendered to the Enrollees within the applicable limitations period, for which Defendants were responsible as primary payer.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

10.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Florida because it is the district in which causes of action accrued.

11.     This Court has personal jurisdiction over Defendants insofar as the Defendants are authorized and licensed to conduct business in Florida, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits in this judicial district.

12.     All conditions precedent to this action have occurred, been performed, or have been waived, including meeting any purported threshold amount to the extent that is applicable.

## BACKGROUND

### I.     The Medicare Act

13.     In 1965, Congress enacted the Medicare Act with the purpose of establishing a federally-funded health insurance program for the elderly and disabled.

14.     The Medicare Act consists of five parts:  Part A, Part B, Part C, Part D, and Part E. Parts A and B create, describe, and regulate traditional fee-for-service, government-administered

Medicare.  *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w.  Under Parts A and B, Medicare provides hospital insurance and coverage for medically necessary outpatient and physician services.  42 U.S.C. § 1395w-21(a)(1)(A).  These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise.  The United States Centers of Medicare & Medicaid Services ("CMS") provides coverage under Parts A & B.  Part C outlines the Medicare Advantage program—described in further detail below—wherein Medicare beneficiaries may elect to use private insurers, *i.e.*, MAOs, paid for by the United States, to provide Medicare benefits.  42 U.S.C. §§ 1395w–21–29.  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

## II.   Medicare Secondary Payer Laws

15.    At the time of its inception, Medicare was the primary payer of medical costs. When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient.  However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare Secondary Payer ("MSP") provisions to the Medicare Act.

16.    The Medicare Secondary Payer (MSP) statute, codified at 42 U.S.C. § 1395y, declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds, and, consequently, Medicare is empowered to recoup from the rightful primary payer, or from the recipient of such payment, if Medicare pays for a service that was, or should have been, covered by the primary insurer. Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage.  If there is overlapping insurance coverage for a particular beneficiary, that overlapping coverage is primary, *i.e.*, it pays the medical expense first—Medicare is always secondary.

17.     The MSP is actually a collection of statutory provisions codified during the 1980s with the intention of reducing federal health care costs. In a nutshell, the MSP declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds. Consequently, Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer. Although the statute is structurally complex—a complexity that has produced considerable confusion among courts attempting to construe it—the MSP's function is straightforward.

18.     To enforce this scheme, the MSP provisions created "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)[.]"  42 U.S.C. § 1395y(b)(3)(A).

19.     Defendants are primary plans under § 1395y(b)(2)(A) because it is a no-fault insurer or workmen's compensation insurer. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

### III.  Medicare Advantage Organizations

20.     In 1997, Congress amended the Medicare Act and added Part C. "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." D. Gary Reed, Medicare Advantage Misconceptions Abound, 27 Health Law 1, 3 (2014). Part C gives Medicare beneficiaries the option of receiving Medicare benefits through private

insurers (*i.e.*, MAOs).[3]

21.     MAOs enter into a contract with CMS to administer and provide the same benefits received under traditional Medicare.  42 U.S.C. §§ 1395w-21, 1395w-23.  Pursuant to this contract, MAOs receive a fixed payment from CMS for each enrollee.  MAOs do not issue a Medicare "insurance policy" but, rather, send out a document describing the Medicare benefits that beneficiaries receive. They do not pay benefits pursuant to a 'policy', but rather under a statutory framework.  Thus, MAOs pay healthcare providers directly for the care received by Part C beneficiaries.  If the costs of this care exceed the fixed payment received from the government, the MAO assumes the risk and cost.  However, if that care costs less than the fixed payment, the MAO keeps the difference as profit.  Thus, MAOs are incentivized to provide health insurance more efficiently and focus on positive health outcomes in a way that traditional fee-for-service Medicare models are not.  *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

22.     To become an MAO, a private insurer must enter a bidding process, meeting certain requirements set by CMS.  Additionally, in providing the basic benefits offered to traditional Medicare beneficiaries, MAOs must abide by coverage determinations provided by CMS and all coverage disputes between beneficiaries and MAOs must go through the traditional Medicare appeals process.  CMS sets the fixed rate at which MAOs will be remunerated per enrollee and establishes services the MAO must provide.

23.     An enrollee's health coverage with an MAO is strictly construed and regulated by

---

[3] Originally, these plans were considered "Medicare+Choice" plans, but the Medicare Modernization Act (MMA) of 2003 renamed this service "Medicare Advantage" plans.

CMS. For instance, CMS creates templates that MAOs must utilize when creating documents, including among others, the evidence of coverage ("EOC"), a document that describes in detail the health care benefits covered by the health plan. CMS requires that every evidence of coverage contain the following language:

> We have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR §§ 422.108 and 423.462, [insert 2017 plan name], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws.

24.     The amount paid to the MAO is carefully calibrated, taking into account, such factors as the geographic location, age, disability status, gender, institutional status, and health status of *each* Medicare Advantage enrollee, so as to ensure actuarial equivalence with the traditional Medicare fee-for-service program option. *See* 42 U.S.C. § 1395w-23(c).

25.     Currently, there are over 16 million individuals enrolled in Medicare Advantage plans nationwide. More than 37 million individuals are enrolled in Medicare prescription drug plans ("PDPs"), either on a stand-alone basis or in connection with a Medicare Advantage plan.

26.     The size and expense of the Medicare Advantage program makes it important that insurance companies, like Defendants, do not deflect their financial obligations under the MSP law onto MAOs and ultimately onto the Medicare Trust Funds.[4]

27.      Beneficiaries who receive their benefits through the traditional Medicare scheme and those who elect to receive their benefits through an MAO plan are all considered Medicare beneficiaries. Moreover, the MSP provisions apply with equal force to MAOs. Indeed, MAOs are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or

---

[4] Medicare is paid for through two trust fund accounts held by the U.S. Treasury.

individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

28.     The legislative history of the MSP provisions demonstrate that MAOs were intended to occupy a status analogous to that of traditional Medicare:

> Under original fee-for-service, the Federal government alone set the legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes.  Therefore, the Conferees intend that this legislation provide a clear statement extending the same treatment to private [MA] plans providing Medicare benefits to Medicare beneficiaries.

H.R. Rep. No. 105–217, at 638 (1997).

29.     Part C of the Medicare Act also contains the following important provisions:

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A)   the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B)   such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w–22(a)(4).

30.     Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which … are not **reasonable** and **necessary** for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (emphasis added).

31.     Because this Section contains an express condition of payment—that is, "no payment may be made"—it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

32.     Once an MAO makes a payment for medical items and services on behalf of its

beneficiaries, the payment is conclusive proof that the items and services were reasonable and necessary.

33.     If a Medicare beneficiary or primary payer contests an MAO's right to reimbursement, the claim is construed as "arising under" the Medicare Act. Therefore, the time limitations for contesting whether a claim is reasonable or necessary under the Medicare Act applies.

34.     In this case, Defendants failed to administratively appeal the MAOs' right to reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

35.     Furthermore, the MSP provisions create a private cause of action against a primary plan when the primary payer fails to pay first or does not reimburse an MAO for its payment: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [the requirements of the MSP Act]." § 1395y(b)(3)(A).  The provisions do not place any limitations on which private parties may bring suit.

IV.   **Primary Payer Reporting Requirements**

36.     In 2007, the Medicare Act was once again amended by the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), which aimed to improve the ability of CMS and MAOs to administer Medicare benefits.  Part of those changes specifically aimed to help CMS and MAOs identify when a Medicare beneficiary was covered by a primary insurance payer.

37.     The 2007 amendments, therefore, created an affirmative duty on primary payers, such as Defendants, to notify Medicare and MAOs when they should pay for medical expenses or

be primary payers.  Specifically, Responsible Reporting Entities ("RRE"), which include insurers like the Defendants, must determine whether its insureds are Medicare beneficiaries.  42 U.S.C. §§ 1395y(b)(7)(A)(i)[5] (RREs shall "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under" Medicare).  If an insured is a Medicare beneficiary, the RRE must electronically notify CMS of the accident and report the Medicare beneficiary's full name, Medicare Health Insurance Claim Number ("HICN"), gender, date of birth, complete address, and phone number.  42 U.S.C. § 1395y(b)(7)(A)(ii).[6]  Then, when CMS or an MAO receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim.  Anticipating the burden of the new reporting requirements, CMS developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically and without authorization.  RREs can electronically query whether a particular insured is a Medicare beneficiary and, if so, make sure to notify Medicare when that insured is in an accident that resulted in the provision of medical treatment.

38.      An insurance company's failure to comply with these reporting requirements results in a civil money penalty of up to $1,000.00 for each day of noncompliance with respect to each claimant.  42 U.S.C. § 1395y(b)(8)(E)(i).

39.      However, compliance with these reporting requirements does not absolve the primary payer of its obligation to pay first.  The reporting requirements are separate and apart from a primary payer's obligation to pay first under the MSP provisions.  Reporting does not, itself,

_____

[5] *See* 42 C.F.R. § 411.25.
[6] RREs are also required to notify CMS and MAOs when the RRE has made the determination to assume responsibility for ongoing medical services or items for one their insureds that is also a Medicare beneficiary.

provide a safe harbor from making primary payments.  It only avoids the imposition of civil penalties.  If a primary payer was responsible to pay first, it must pay first regardless of conduct, intent, or even the primary payer's knowledge of a potential secondary payer.  The obligation of a primary payer to pay first or reimburse CMS or MAOs is only discharged by making the payment.

## V.     First-Tier and Downstream Entities

40.     In addition to MAOs, first-tier and downstream entities also suffer damages, i.e. an injury-in-fact, when a primary plan fails to make a payment or reimburse pursuant to the MSP laws.

41.     A first-tier entity is any party that enters into a written arrangement, acceptable to CMS, with an MAO, to provide administrative or health care services for a Medicare eligible individual under the MA program. 42 C.F.R. § 422.2; *see also Medicare Managed Care Manual*, Ch. 11 (Rev. 83, 04-25-07).

42.     A downstream entity is any party that enters into a written arrangement, acceptable to CMS, with persons or entities involved with the MA benefit, below the level of the arrangement between an MAO (or applicant) and a first-tier entity. *See* 42 C.F.R. § 422.2.

43.     First-tier and downstream entities administer and provide Medicare services to the Enrollees. The first-tier and downstream entities bear the full risk of loss pursuant to their contractual obligation with MAOs.

44.     First-tier and downstream entities include Management Service Organizations ("MSO"), and Independent Physician Associations ("IPA"), and other full-risk providers whom all have standing to bring suit under 42 U.S.C. § 1395y(b)(3)(A). *See Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.,* 758 F.3d 787, 789–90 (6th Cir. 2014) (holding that medical providers who suffer an injury-in-fact have standing to sue primary plans in violation

of its MSP obligations under 42 U.S.C. § 1395y(b)(3)(A)).

## PARTIES

45.     MSPRC is a Delaware series limited liability company with a principle place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSPRC has established various Specific series wherein each specific Series is owned exclusively by MSP Recovery Claims, Series LLC. The specific Series have been designated with specific characteristics to identify the specific assignors assigning to MSPRC. All specific Series form a part of MSPRC and owned by MSPRC. MSPRC's limited liability company agreement provides for the establishment of one or more specific Series. The records maintained for such Series account for the assets associated with such specific Series. All records of all Series are maintained together with all assets of the limited liability company. The limited liability company agreement provides that there are no limitations on liabilities of any Series. Pursuant to its limited liability agreement and applicable amendment(s), MSPRC owns and controls any and all Series interests and all claims rights transferred from any assignor and may allocate any assets, including assignments, to a Series. MSPRC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSPRC.

46.     Numerous assignors have assigned their recovery rights to assert the causes of action alleged in this Complaint to series LLCs of the Plaintiffs, and Plaintiffs maintain the legal right, by and through its limited liability company agreement, to sue on behalf of each of its designated series LLCs. As such, Plaintiffs have the right and authority to seek reimbursement of Medicare payments made by the assignors that should have been paid, in the first instance, by Defendants.

47.     Plaintiffs may pursue and enforce all legal rights of recovery and reimbursement

for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for beneficiaries under Medicare Part C; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

48.      Defendants are insurance companies that are authorized to conduct business in the State of Florida.

49.      Complete diversity exists between the parties.

## STANDING

50.      MAOs, MSOs, and IPAs have entered into binding agreements to assign all their rights of recovery, subrogation, and reimbursement (the "assignors"), wherein Plaintiffs are the ultimate assignee. Specifically, the assignors have irrevocably assigned all rights of recovery, subrogation, and reimbursement for their conditional payments during the relevant limitations period(s). Because Plaintiffs own the assignors' claims and associated rights, Plaintiffs have standing to bring this action to recover the conditional payments for accident-related medical expenses that its assignors made on behalf of the Enrollees.

51.      All of these assignments are valid and binding contracts.

## REPRESENTATIVE ASSIGNMENT AGREEMENTS

52.      Plaintiffs' assignors have executed irrevocable assignments of any and all rights to recover conditional payments made on behalf of Assignors' health plan members and Enrollees, including those who were insured by Defendants. The specific assignment language contained in the assignment agreements from Summacare, Inc. ("Summacare"), Interamerican Medical Center

Group, LLC ("IMC") and Hygea Health Holdings, Inc. ("Hygea"), three of the representative claims in this lawsuit, are set forth below.

53.     By agreement dated May 12, 2017, Summacare, an MAO, irrevocably assigned to MSP Recovery any and all of its right to recover conditional payments made on behalf of its Enrollees ("Summacare Assignment"):

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and all of its successors and assigns, and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest, and entitlements in and to the Assigned Claims shall remain the confidential exclusive property of MSP recovery or its assigns. This assignment is irrevocable and absolute.

[*See* Exhibit A, *Summacare-MSP Recovery Assignment at § 4.1*].

54.     On June 12, 2017, MSP Recovery assigned all rights acquired from the Summacare Assignment to a protected series of MSPRC, i.e., Series 16-11-509 LLC.

55.     Specifically, the assignment from MSP Recovery to the protected series states:

> [E]ach Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **May 12, 2017**, by and among **SummaCare, Inc.**, an Ohio corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(the "Agreement")**.

[*See* Exhibit B, *MSP Recovery-MSPRC Assignment*].

56.     By agreement dated May 12, 2017, IMC, an MSO, irrevocably assigned to MSP Recovery any and all of its right to recover conditional payments made on behalf of its Enrollees

("IMC Assignment"):

> By way of this Agreement, Client appoints, directs, or otherwise, irrevocably *assigns* all of Client's rights as it pertains to the rights pursuant to any plan, State or Federal statute(s) whatsoever directly and/or indirectly for any of its members and/or plan participants, and/or its rights…

[Exhibit C, *IMC Assignment at* § 1.1] (emphasis added).

57.    On February 20, 2015, MSP Recovery assigned all rights acquired from the IMC

Assignment to MSPA Claims:

> Assignor hereby irrevocably *assigns*, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties from or relating to the Claims.

[Exhibit C, *MSP Recovery-MSPA Claims Assignment at § 1*] (emphasis added).

58.    By agreement dated September 15, 2015, Hygea irrevocably assigned to MSP

Recovery, LLC ("MSP Recovery") any and all of its right to recover conditional payments made

on behalf of its Enrollees ("Hygea Assignment"):

> Client hereby irrevocably *assigns*, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for Client that Client has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to Client arising from or relating to the Assigned Claims. By this Agreement, the parties acknowledge and agree to the following: (i) the transfer, grant, or assignment of any and all Client's right, title, ownership, interest and entitlements, and/or any information Client makes available, assigns, transfers, conveys or delivers to MSP Recovery is proprietary, confidential and the sole property of MSP Recovery or its assigns, and (ii) it shall remain the sole and exclusive property of MSP Recovery, and (iii) shall survive the termination or expiration of this Agreement, notwithstanding anything herein to the contrary.

[*See* Exhibit D § 1.1, *Hygea-MSP Recovery Assignment*].

59.    On June 12, 2017, MSP Recovery assigned all rights acquired from the Hygea

Assignment to a protected series of MSPRC, i.e., Series 15-08-19 LLC.

60.     Specifically, the assignment from MSP Recovery to the protected series states:

[E]ach undersigned Assignor… irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Health Care Cost **Recovery Agreement** dated **September 14, 2015**, by and among **Hygea Health Holdings, Inc.,** a Florida corporation **(the "Client")**, and **MSP Recovery, LLC**, a Florida limited liability company **(the "Agreement")**.

[*See* Exhibit E, *MSP Recovery-Plaintiff Assignment*].

61.     All purported conditions precedent to the filing of this lawsuit have occurred or been performed.

62.     Pursuant to MSPRC's limited liability agreement, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to MSPRC.

63.     Therefore, MSPRC and MSPA Claims may pursue its assignors' rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendants.

## REPRESENTATIVE FACTS

64.     Subject to the collection of additional data through discovery, Plaintiffs allege the following representative claims involving payments for medical services that Defendants were primarily responsible to pay.

65.     On December 13, 2013, S.W. was injured in an accident by an individual or insured under Westfield's insurance policy. As a direct and proximate result of this accident, S.W. required medical items and/or services. S.W. was enrolled in a MA plan, managed by Summacare. S.W.'s medical expenses were subsequently paid by Summacare for the dates of service of December 13,

2013 through March 18, 2014, whose right to recover under the MSP Act has been assigned to MSPRC. However, Westfield did not reimburse MSPRC or Summacare for S.W.'s medical items and services within the requisite time frame, as required by a primary payer. Westfield's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from Westfield, which have ultimately been assigned to MSPRC.

66.     On March 29, 2015, D.P. was injured in an accident by an individual or insured under AIGs' insurance policy. As a direct and proximate result of this accident, D.P. required medical items and/or services. D.P. was enrolled in a MA plan, managed by IMC. D.P.'s medical expenses were subsequently paid by IMC for the dates of service of January 12, 2015 through March 31, 2016, whose right to recover under the MSP Act has been assigned to MSPA Claims. However, AIG did not reimburse MSPA Claims or IMC for D.P.'s medical items and services within the requisite time frame, as required by a primary payer. AIG's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from AIG, which have ultimately been assigned to MSPA Claims.

67.     On November 5, 2014, K.B. was injured in an accident by an individual or insured under Amerisure's insurance policy. As a direct and proximate result of this accident, K.B. required medical items and/or services. K.B. was enrolled in a MA plan, managed by Hygea. K.B.'s medical expenses were subsequently paid by Hygea for the date of service of November 5, 2014, whose right to recover under the MSP Act has been assigned to MSPRC. However, Amerisure did not reimburse MSPRC or Hygea for K.B.'s medical items and services within the requisite time frame, as required by a primary payer. Amerisure's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from Amerisure, which have ultimately been assigned to MSPRC.

68.     The factual allegations regarding the representative claims were identified by Plaintiffs using various databases and claims data. [*See* Exhibit F, *S.W.'s Claims Data*]; [Exhibit G, *D.P.'s Claims Data*]; [Exhibit H, *K.B.'s Claims Data*].

69.     Defendants reported their responsibility as an RRE to CMS[7], including information about the representative claims' accident, the name of the reporting entity, and the type of insurance offered. This reporting demonstrates Defendants were aware of the accident and even assigned claim numbers to said accident. [*See* Exhibit I, *S.W. My Ability Information*]; [Exhibit J, *D.P. My Ability Information*]; [Exhibit K, *K.B. My Ability Information*].

70.     On August 8, 2017, Plaintiffs transmitted a letter to Defendants requesting information related to potential reimbursements to Plaintiffs' assignors as mandated by 42 C.F.R. § 411.25. Thus, Defendants had actual and constructive knowledge that they were the primary payer for all the Enrollees that were paid by the in-network providers of Plaintiffs' assignors. Defendants were required to ascertain the information for each enrollee in accordance with 42 C.F.R. § 411.25 and supply the information to Plaintiffs' assignors and/or Plaintiff, as requested. [*See* Exhibit O, *§ 411.25 Letters*]. Defendants failed to do so.

71.     Plaintiffs then cross-referenced Defendants' reported information to CMS and ISO with the claims data provided by Summacare, IMC, and Hygea. Plaintiffs identified instances whereby the representative enrollees involved in an accident and incurred medical expenses as a result. Of those claims, Plaintiffs determined that Defendants were responsible to provide primary payment. Thus, there is reasonable evidence of overlapping coverage and evidence that the

---

[7] Plaintiff attaches a list of instances wherein Defendants reported to CMS as no fault and workmen's compensation plans related to Plaintiff's assigned claims and other putative class member claims. [*See* Exhibit L, *Westfield MSP Reporting*]; [Exhibit M, *AIG MSP Reporting*]; [Exhibit N, *Amerisure MSP Reporting*].

payments were made by a Medicare Part C payer instead of the primary payers, Defendants. And, based on the nature of the medical treatment and Defendants' failure to reimburse Summacare, IMC, and Hygea for those medical expenses, the data supports the good-faith allegation that Defendants failed to pay for the representative enrollees' claims as primary payers.

72.      Full details of this claim, i.e., specific payments, coverage determinations, etc., are in Defendants' possession and will be located and assessed through the process of discovery. Defendants were and are in the best position to know which payments have been made by Plaintiffs' assignors because the MAOs and its in-network providers frequently will not know which of its payments has been subsequently duplicated by an insurer. *See U.S. v. Baxter Int'l, Inc.*, 345 F.3d 866, 885 (11th Cir. 2003) (the MSP Act "is built on the recognition that **Medicare frequently will <u>not</u> know** which of its payments has been subsequently duplicated by an insurer. . .").

## **CLASS DEFINITION**

73.      The putative class (hereinafter referred to as "Class Members") is defined as:

All non-governmental organization (including, but not limited to MAOs, first tier entities, and downstream entities) or their assignees, that provide benefits under Medicare Part C in the United States, who made payments for accident-related medical items and services on behalf of their beneficiaries between 2011 and 2017 (the "Class Period"), for which the Defendants had provided no-fault insurance or workmen's compensation coverage related to the medical items and services involving accidents, and for which Defendants did not make primary payment or has not reimbursed in full or in part.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CLASS ALLEGATIONS

### Damages Relief Class

74.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' medical expenses, when Defendants should have made those payments as primary payers and should have reimbursed the Class Members.

75.     As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP provisions.  This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

76.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

77.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

        a.  **Numerosity**:   Joinder of all members is impracticable.  Upon information and

belief, there are hundreds of MAOs first tier entities, and downstream entities (including its assignees) throughout the United States who were not reimbursed by Defendants under a policy which provided PIP, Med Pay coverage, or workmen's compensation benefits for medical expenses arising out of accidents.  Thus, the numerosity element for class certification is met.

b. **Commonality**:  Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendants failed to make reimbursement payments, report their ORM involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course.  Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse the assignors pursuant to the MSP provisions.  Each Class Member shares the same needed remedy, *i.e.*, reimbursement.  Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**:  Plaintiffs' claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiffs and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiffs possess the

same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiffs' claims and the Class Members' claims. Plaintiffs' claims are typical of the Class Members' claims because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by its contractual obligation with Enrollees. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, have a right to relief for Defendants' failure to make primary payments, or reimburse Plaintiffs and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiffs and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiffs and the Class Members' claims, as will be Defendants' legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts. In fact, two courts have already concluded that Plaintiffs' counsel is "willing and able to take an active role as class representative and advocate on behalf of all class members." *E.g., MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

e. **Ascertainability**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, first tier entities, and downstream entities, and providing notice to such entities would could be accomplished by direct communication.

78.     The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class").  Defendants, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

79.     It is the custom and practice of the CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology for generalized proof of Class-wide impact, using a software system (the "MSP System") designed and developed by Plaintiffs and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.  Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases wherein the plaintiff, like in this case, asserted an MSP private cause

of action breach of contract causes of action. *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

80.     Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

81.     Administering the proposed Damages Class will be relatively simple. Defendants provided no-fault workmen's compensation policies with claimants who are also Medicare beneficiaries.  Once that data identifying these policies is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiffs and the Class Members can identify those payments made for medical treatment where the Defendants were (1) the primary payers and (2) for which reimbursement was not made. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using the same methodology.

## CAUSES OF ACTION

82.     The basis for Plaintiffs' claims is as a result of the Defendants' failure to pay or reimburse under which Medicare payments are secondary and reimbursable if any other primary plan is liable.

83.     Defendants are primary payers that that should have paid for the same items and/or services that were paid or otherwise financially absorbed by Plaintiffs' assignors. These items and services were incurred by the MAO and its in-network Medicare Part C providers as secondary payers because the primary payer should have paid for these items and/or services or should have otherwise reimbursed the secondary payer which are Plaintiffs' assignors.

84.     In addition to having been beneficiaries with the Class Members at the time of accidents, Class Members' beneficiaries were also covered by a medical payments policy issued by Defendants.

85.     Defendants failed to provide primary payment or appropriately reimburse the Class Members.

86.     The Class Members advanced Medicare payments on behalf of their beneficiaries for medical treatment and supplies for which Defendants were responsible as primary payers. Defendants were primarily responsible by virtue of its contractual obligation with Medicare beneficiaries enrolled in a Medicare Advantage plan administered by a Class Member. Class Members paid for the beneficiaries' Medicare Services when Defendants had the primary obligation to do so. Accordingly, Plaintiffs seek damages on behalf of themselves and similarly situated assignors and their assignees for Defendants' violation of the MSP provisions and breach of contract.

87.     The Defendants are liable since (1) the Defendants' are primary plans; (2) the

Defendants' failed to provide for primary payment or appropriate reimbursement; and (3) caused damages as a result of having a secondary payer cover the financial costs of the items or services that were to be paid by the primary payer.

**COUNT I**
**Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)**

88.     Plaintiff incorporates by reference paragraphs 1-87 of this Complaint.

89.     Plaintiff assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated assignors.

90.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendants' status as a primary plan; (2) the Defendants' failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

91.     Defendants' no-fault and workmen's compensation policies are primary plans, and Defendants were the primary payers under 42 U.S.C. § 1395y(b)(2) to pay for accident-related expenses.

92.     Instead, the Class Members and entities that have assigned their recovery rights to Plaintiffs paid for those items and services as part of providing Medicare benefits.

93.     Because Defendants were the primary payers, the Class Members' payment of the accident-related medical expenses were conditional payments, which ordinarily are made by Medicare providers for services not covered by other applicable insurance.

94.     Defendants were required to timely reimburse the assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

95.     Because Defendants failed to reimburse Plaintiffs and the Class Members, Plaintiffs and the Class Member suffered money damages.

96.     Defendants have derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of the assignors.  Not only did the Defendants avoid having to pay for medical expenses they were otherwise obligated to pay, the Defendants took advantage of the less expensive costs passed on to Medicare patients.

97.     Therefore, Plaintiffs and the Class Members may avail themselves to the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the assignors' secondary payment.

98.     In this case, Defendants failed to administratively appeal the assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

99.     Plaintiffs, for itself and on behalf of the Class, bring this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of Plaintiffs and the Class Members' conditional payments of their Enrollees' accident-related medical expenses.

**COUNT II**
**Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract**

100.     Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint.

101.     The assignors are subrogated the right to recover primary payment from Defendants for the Defendants' breach of contract with their insured, pursuant to the MSP provisions. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an accident, and Defendants failed to meet that obligation.  This obligation was, instead, fulfilled by the Plaintiffs and other Class Members.  Under the MSP provisions, Plaintiffs

are permitted to subrogate the enrollee/insured's right of action against the Defendants. *See* 42 C.F.R. § 411.26.

102.    Plaintiffs complied with any conditions precedent to the institution of this action, to the extent applicable.

103.    Defendants failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

104.    Defendants failed to pay each enrollee's covered losses, and Defendants had no reasonable proof to establish that it was not responsible for the payment.

105.    Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein.   Plaintiffs and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

106.    Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

107.    WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

    a.   find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

    b.   designate Plaintiffs as representative for the respective Class and Plaintiffs' undersigned counsel as Class Counsel for the respective Class; and

    c.   issue a judgment against Defendants that:

i.        grants Plaintiffs and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

ii.       grants Plaintiffs and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

iii.      grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iv.      grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: January 3, 2018.                Respectfully submitted,

**MSP Recovery Law Firm**
*Counsel for Plaintiffs*
5000 S.W. 75th Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2239

By: */s/ Frank C. Quesada*
Frank C. Quesada, Esq., Fla. Bar No. 29411
E-mail: serve@msprecovery.com
        fquesada@msprecovery.com

**Armas Bertran Pieri**
*Counsel for Plaintiff*
4960 SW 72nd Avenue, Suite 206
Miami, FL 33155
J. Alfredo Armas, Esq., FL Bar No. 360708
Eduardo E. Bertran, Esq., FL Bar No. 94087
E-Mail: alfred@armaslaw.com
       ebertran@armaslaw.com

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of this motion was electronically filed with the Clerk of the Court *via* CM/ECF on this 3rd day of January, 2018. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either *via* transmission of Notices of Electronic Filing generated by CM/ECF or some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

*/s/ Frank C. Quesada*

## SERVICE LIST

**W Mason, Esq.**
**John J. Hagerty, Esq.**
*Counsel for Westfield Insurance Company*
FOX ROTHSCHILD LLP
Esperante Building
222 Lakeview Avenue
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Fax: (561) 835-9602
E-Mail:      wmason@foxrothschild.com
             jhaggerty@foxrothschild.com

**Benjamine Reid, Esq.**
**D. Matthew Allen, Esq.**
*Counsel for AIG Property Casualty Company*
CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL 33607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
E-mail:      breid@carltonfields.com
             mallen@carltonfields.com

**Suzanne Jaffe Bloom, Esq.**
**Jeffrey J. Amato, Esq.**
**Benjamin Sokoly, Esq.**
**Mollie C. Richardson, Esq.**
**Cristina M. Fernandez, Esq.**
*Counsel for AIG Property Casualty Company*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-Mail:      sbloom@winston.com
             jamato@winston.com
             bsokoly@winston.com
             mrichardson@winston.com
             cfernandez@winston.com

**Spencer H. Silvergate, Esq.**
**Francisco Ramos, Jr., Esq.**
*Counsel for Amerisure Insurance Company*
CLARK SILVERGATE, P.A.
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Telephone:      305-377-0700
Fax:                305-377-3001
E-Mail:          ssilvergate@cspalaw.com
                      mpedraza@cspalaw.com
                      framos@cspalaw.com
                      socd@cspalaw.com
                      cdeleon@cspalaw.com

**Lori McAllister, Esq.**
*Counsel for Amerisure Insurance Company*
DYKEMA GOSSETT PLLC
Capitol View Bldg.
201 Townsend Street, Suite 900
Lansing, MI 48933
Telephone: (517) 374-9150
E-Mail:          lmcallister@dykema.com