```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                         CASE NO. 17-CV-23961-CMA
 3
     MSP RECOVERY CLAIMS, SERIES LLC,
 4                                         Miami, Florida
                   Plaintiff(s),
 5                                         May 21, 2021
             vs.
 6
     AMERISURE INSURANCE COMPANY,
 7
                   Defendant(s).       Pages 1 - 22
 8   ------------------------------------------------------------
 9                          DISCOVERY HEARING
                    TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10                  BEFORE THE HONORABLE JONATHAN GOODMAN
                      UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     FOR THE PLAINTIFF(S):  FRANCESCO A. ZINCONE, III, ESQ.
13                          ARMAS BERTRAN PIERI
                            4960 S.W. 72 Avenue
14                          Miami, Florida 33155
                            (305) 461-5100
15                          fzincone@armaslaw.com
16
17
18
19
20
21
22
23
24
25
```

```
 1    APPEARANCES (CONT'D)

 2

 3    FOR THE DEFENDANT(S):   LORI MCALLISTER, ESQ.
                              DYKEMA GOSSETT, PLLC
 4                            201 Townsend Street
                              Lansing, MI 48933
 5                            (517) 374-9150
                              lmcallister@dykema.com
 6

 7                            SHANNON PATRICIA MCKENNA, ESQ.
                              CLARKE SILVERGLATE, P.A.
 8                            799 Brickell Plaza
                              Miami, FL 33131
 9                            (305) 377-0700
                              smckenna@cspalaw.com
10

11    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
12                            jemancari@gmail.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   Thereupon,

2   the following proceedings were held via Zoom videoconference:

3            THE DEPUTY CLERK:  Calling case MSP Recovery Claims,

4   Series LLC v. Westfield Insurance Company, case No. 17 23961,

5   civil, Altonaga.

6            Counsel, please state your appearance for the record.

7            MR. ZINCONE:  Good morning, your Honor.  This is

8   Francesco Zincone on behalf of the plaintiff MSP Recovery

9   Claims, Series LLC.

10           THE COURT:  Thank you.

11           For the defense.

12           MS. MCALLISTER:  Good morning, your Honor.  Lori

13   McAllister as one of two for defendant Amerisure Insurance

14   Company.  This is actually a consolidated proceeding with other

15   insurance matters, so the particular case that we are here on

16   involves Amerisure.

17           THE COURT:  I understand.

18           MS. MCKENNA:  Good morning, your Honor.  I'm here with

19   Ms. McAllister on behalf of Amerisure.

20           THE COURT:  I understand.  Thank you very much.

21           So, folks, let me just state a couple of rules, which

22   is before speaking please state your name.  Even though I see

23   your name on the screen underneath your video image, if anybody

24   ever orders a transcript of the hearing, I don't think the

25   court reporter gets this particular video depiction with your

1    name under your image.  I think the court reporter just gets an

2    audio file.  So he or she will not know who is speaking unless

3    you identify yourself.

4            Next, please put your microphone on mute until it is

5    time to speak.

6            Third, try to pause for about half a second before

7    speaking to make sure that you don't inadvertently interrupt

8    the person speaking before you.

9            We are here on a discovery hearing.

10           Let me just cut to the chase because, Mr. Zincone, I

11   have reviewed relevant portions of the file before showing up

12   at this hearing, and it seems to me that many of the battles

13   you have already lost, not in front of me but in front of Judge

14   Altonaga.  The judge has already granted in large part the

15   motion to dismiss.  This lawsuit now against Amerisure is one

16   claimant, KB, against one defendant.  That's it.  In addition

17   to that, you have been foreclosed from filing a motion for

18   class certification.  So you will never turn this into a class

19   action, at least unless Judge Altonaga changes her mind or an

20   appellate court reverses.  But right now that is my world.  I

21   am bound by Judge Altonaga's rulings, as we all are.

22           So once I read that I said, my gosh, shouldn't that

23   resolve many of the discovery disputes, because it seems to me

24   nearly all or maybe even all of the discovery disputes flow

25   from the fact that this lawsuit is now one claimant, KB, that's

1    it.  No class action, no more putative class action.  So that

2    significantly narrows the universe of relevant discovery from

3    maybe this far to extremely narrow.

4         So I don't know if you are prepared to concede those

5    points, but before we get into the nitty gritty of each

6    particular category of a 30(b)(6) topic list or each specific

7    interrogatory, let me just hear your comments about what I have

8    just said.

9         MR. ZINCONE:  Thank you, your Honor.  This is

10   Francesco Zincone on behalf of the plaintiff.

11        I agree with your Honor that it is I think beneficial,

12   perhaps, I think to look at this from a larger perspective and

13   that your Honor's conception of the case will at this stage

14   impact the way each one of these particular categories or

15   requests is ultimately ruled upon.  So I think this is a better

16   way of looking at it before we dive in.

17        It is true that this case is no longer a class action.

18   At the time when it was filed, obviously, the plaintiff brought

19   a single claim stated as an exemplar.  That claim, as your

20   Honor pointed out, is KB's claim.  However, this case is not

21   simply about the KB claim, and that is what I would like to

22   make clear and explain the way we look at these cases and some

23   recent rulings as to how the pleadings themselves frame the

24   issue.

25        If you look to the pleading, it states that the KB

1    claim arises from a particular systematic or I guess policy on

2    the part of Amerisure to not, ultimately to not coordinate or

3    address claims with Medicare Advantage organizations and to

4    treat Medicare Advantage organizations the same way that they

5    treat Medicare with respect to MSP Act reimbursement

6    obligations.  As a result of that misconduct, in violation of

7    the statute, the KB claim has arisen.

8            Now, if the plaintiff were simply KB's assigner, then

9    I might agree with your Honor regarding this being a single

10   claim, or if the plaintiff had received just a single

11   assignment from KB and had stated that this is KB versus

12   Amerisure, then I would agree with your Honor's, ultimately

13   your Honor's conception of where things stand.  But the

14   plaintiff in this case is a claim aggregator; he takes

15   assignments from Medicare Advantage organizations and --

16           THE COURT:  All right.  Go ahead.

17           MR. ZINCONE:  -- and Medicare Advantage organizations

18   have assigned to the plaintiff, to the plaintiff in this case,

19   their right to recover against Amerisure with respect to all

20   instances of injury arising from this particular course of

21   misconduct.

22           In light of that, your Honor -- I think that it would

23   be analogous to, and I have gone through this before with your

24   Honor and I don't want to take up the same amount of time that

25   I did the last time.  I know we had a detailed discussion about

1   this in the MGA case, which your Honor heard, I think, toward

2   the end of 2020.  We had about four hours of hearing regarding

3   our request for data matching.

4        I do want to point out that there are some

5   similarities between this case now procedurally and that one.

6   That case was not filed as a class action, and your Honor

7   basically heard our request for data matching, because it was

8   an aggregate case purely from the start, and basically put a

9   pin in things, said that you were not going to rule on the

10  issue of data matching and a larger information exchange until

11  the motion to dismiss had been ruled upon.  The motion to

12  dismiss in that case still remains pending and hasn't yet been

13  ruled upon by Judge Cooke.

14       In this case we are beyond the motion to dismiss.  We

15  know what this case is going to look like.  We know that it is

16  just about MSP's claims.  It is no longer about the class

17  claims, but it is about MSP's aggregate rights in this

18  particular instance.  So that is what we are looking to take

19  discovery on.

20       We have stated a particular instance of injury in the

21  complaint.  That does not mean that we are foreclosed from

22  discovery regarding other instances of injury arising from the

23  same conduct.

24       In that respect I would liken this to a request for --

25  and really Nos. 1 through 6 are requests for information

1    regarding the Medicare beneficiaries that Amerisure has settled

2    with or insured.  It is very similar to a request, your Honor,

3    for call logs in a TCPA case.  If you were to bring a claim

4    against a particular TCPA defendant for a particular phone

5    call, you certainly don't have to put all instances in the

6    complaint, and you are certainly not foreclosed from seeking

7    other historical records that might lead to identification of

8    other instances of injury.

9        In this particular instance we're asking for the

10   defendant's Medicare reporting information.  We are asking for

11   a list of the people that they have entered into settlements

12   with or insured on a no fault basis.  Those are historical

13   electronically-maintained documents.

14       Their Medicare reporting is done pursuant to statutory

15   obligations.  It is something that already has gone out the

16   door in electronic form to CMS.  There is really no reason to

17   consider it burdensome or really novel, and we're asking to

18   basically match up our records against their historical reports

19   to CMS to say, here's the full universe of instances that arose

20   from this misconduct.  It could be that it is only KB, but it

21   could be that there are a number more, and that is the way this

22   case, that is really the way this case is pled.  It is pled as

23   something that is beyond KB.

24       I want to point out just recently there was a res

25   judicata decision entered, a report and recommendation that was

1    issued by Magistrate Judge Torres.  That is in the <u>Esurance</u>

2    case.  Magistrate Judge Torres took a more expansive view of

3    the pleading, of the prior pleadings in that particular case,

4    saying that really it frames something that is more than the

5    particular claims that are stated in the body of the complaint,

6    and as a result he has recommended a dismissal of plaintiff's

7    claims now on the basis of res judicata stemming from two prior

8    dismissals of the action.

9              Now, if that is the case and his concept is correct or

10   his understanding of the pleading is correct, then we need to

11   be permitted to litigate every instance in a particular case,

12   and that is what we are asking to do here, and we are asking

13   for proportional discovery that is tailored, that is really

14   just electronic data, in order to get to that universe of

15   claims and resolve the entire dispute before Judge Altonaga

16   now.

17             THE COURT:  So who is going to be doing the response

18   on behalf of the defense?  The reason I ask is, let me just

19   mention my policy.

20             Since we have two lawyers representing Amerisure, I

21   only allow one lawyer per side.  No double teaming.  It is one

22   lawyer per side per issue.

23             So right now we are just kind of taking a 30,000 foot

24   overview of the overall discovery perspective.  If later on we

25   get into a subissue, you can certainly switch lawyers.  But

```
 1    right now we will limit the 30,000 foot overview to whoever you
 2    tell me will be arguing.
 3              MS. MCALLISTER:  Lori McAllister, your Honor, and I
 4    will be doing the arguing on the issue.
 5              THE COURT:  Just out of curiosity, where are you
 6    Zooming in from?
 7              MS. MCALLISTER:  I am Zooming in from Michigan, your
 8    Honor, and I have been admitted pro hac in this case.
 9              THE COURT:  All right.  Just out of curiosity, what
10    city in Michigan?
11              MS. MCALLISTER:  I'm in East Lancing, Michigan.
12              THE COURT:  All right.  What is the temperature there
13    today?
14              MS. MCALLISTER:  Your Honor, we are supposed to hit 86
15    today, which is unprecedented in May.
16              THE COURT:  I was expecting you to say, Judge, it's 47
17    degrees or something like that.
18              MS. MCALLISTER:  That would be more typical of a May
19    day.
20              THE COURT:  Well, enjoy the nice day there, if you
21    think 86 is nice.
22              MS. MCALLISTER:  It is supposed to be high humidity,
23    so it is a bit of a shock going from 47 over the weekend to 86.
24              THE COURT:  I understand.  All right.  So give me your
25    thoughts, please, overall.
```

1          MS. MCALLISTER:  Your Honor, I don't know how you can

2     read Judge Altonaga's orders the way Mr. Zincone does, frankly.

3     She was very clear in both her two orders saying he can't file

4     motions for class certification, and then in her order of

5     dismissal saying, and I quote from her opinion:  Plaintiff's

6     standing is shown and limited by plaintiff's exemplar claims.

7     Exemplars limits standing.

8          Those are quotes from page 9 and page 11 of her

9     opinion.

10         I don't know how he avoids those statements in the

11     judge's opinions.  I think it is crystal clear what she

12     intended.  She even addressed all of the indecipherable mess,

13     essentially, that Exhibits A through C were of the complaint

14     and said, look, you can't decipher these and they are all

15     dismissed.  To the extent that those are intended to be other

16     examples, they are dismissed; they are out of the case.

17         So we start from a very different place than

18     Mr. Zincone does with regard to what the court ruled.

19         We do not believe that the court said that, well, once

20     you get one, you can then explode it to all these other claims.

21         This is not a situation of more damages attributable

22     to the KB claim.  We have produced everything related to the KB

23     claim.  There is no question there, and we have indicated we

24     will produce the witness related to the KB claim.  So there is

25     no issue on that point either.

1          With regard to all of these other alleged incidents,

2     those would be separate claims that Hygea as the assignor or

3     assignee in this situation might have that have nothing to do

4     with the KB claim, which is the only one so far in which they

5     have established standing.

6          So if they were to find a different claim, what would

7     their remedy be?  The remedy would not be in this case; it

8     would have to be in a different case.  The reason we know that

9     is because under the amended scheduling order that Judge

10    Altonaga issued on November 20th, she set the final date for

11    amending the complaint to be January 4th of 2021.

12         Now, if she won't let him amend -- if she won't let

13    him file a class certification motion 14 days late, she

14    certainly is not going to allow them to amend their complaint

15    contrary to the court's scheduling order.

16         So we believe that what we have here is a search for

17    other claims that belong in other lawsuits, if any, and an

18    effort to try to find claims that they do not currently have or

19    know that they have.

20         The fact that he brings up the MGA cases is

21    interesting because I did take a look at that.  As I read that

22    case, the court allowed discovery, but you only allowed

23    discovery on the exemplar claims.  Here, that's what we are

24    saying, is the exemplar claim is it, and that is what the court

25    has held with Judge Altonaga's opinion, and so that is what

1    they should be limited to.

2         With regard to the arguments about, well, we should

3    get to know their system, how they report, whether they have

4    all of the other reporting that they have done, none of that

5    relates to KB's claim.

6         As we have stated unequivocally and is documented in

7    the claims file that we provided, this claim was never recorded

8    under the Medicare Secondary Payer Act, and the reason it was

9    never recorded is because it did not have to be.  It is a

10   third-party slip-and-fall case, and Amerisure on behalf of its

11   insured never admitted liability for the claim and Amerisure

12   never settled an underlying claim.  So there has been no

13   demonstrated responsibility which would require it to report

14   something under the Federal Act.

15        So how we set up our Medicare secondary payer to some

16   has nothing to do with KB's claim, and that is an independent

17   reason why we say this is just a wild goose chase, frankly,

18   which is probably something we say in Michigan but you probably

19   don't get much of in Florida.  But nonetheless --

20        THE COURT:  Well, actually, what lawyers typically use

21   here -- in fact, I have been a federal magistrate judge for

22   eleven years and I think right now is the first time I have

23   ever heard anybody use the phrase "a wild goose chase" in a

24   discovery hearing.  I have heard the comment in other social

25   settings.  But here in the Southern District of Florida lawyers

```
 1    who are objecting to discovery use a different phrase, and they

 2    use that phrase all the time.

 3            Do you know what that phrase is?

 4            MS. MCALLISTER:  Not relevant, not proportionate to

 5    claims?

 6            THE COURT:  No, no, a phrase similar to a wild goose

 7    chase.

 8            MS. MCALLISTER:  I am not sure then, your Honor.

 9            THE COURT:  Ms. McKenna, any idea?

10            MS. MCKENNA:  Fishing expedition, your Honor.

11            THE COURT:  That's exactly right.  Another animal

12    metaphor.  A fishing expedition.  They sort of mean the same

13    thing.  I understand.

14            MS. MCALLISTER:  And coming from the Great Lake state,

15    I should have gotten that one.  So shame on me.

16            THE COURT:  Well, in any event.

17            MS. MCALLISTER:  Finally, dealing with this issue on

18    Judge Torres' opinion on res judicata, I have looked at that

19    opinion because Mr. Zincone told me about it and graciously

20    provided me with a copy.  I don't see how it has any

21    applicability here.

22            This is a situation where the court has already

23    narrowed the case, and done so by order.  So if they file

24    another case, I don't know how I am going to be able to argue,

25    well, it was decided as part of this case as res judicata when
```

1    I have an Altonaga order saying this is all that is being

2    litigated in this case, the KB case.

3              THE COURT:  Right.

4              MS. MCALLISTER:  So it is apples and oranges, your

5    Honor.

6              So overall, your Honor, we can go through everything

7    if you want to go through everything, but I don't think we get

8    by your preliminary point, which is this case is a KB claim.

9    We produced everything related to KB, and that should be the

10   end of it, we respectfully submit.

11             THE COURT:  I understand.  So if we need to go through

12   the individual items, we will, but here is the initial

13   observation.  So this is not necessarily a particular ruling on

14   a specific discovery dispute, but, Kim, this should be part of

15   our discovery order.

16             Mr. Zincone, I agree with Ms. McAllister.

17   Specifically, I am bound by Judge Altonaga's ruling on the

18   motion to dismiss, on her ruling concerning standing, on the

19   existing trial scheduling order, on the current inability to

20   add any additional exemplar representatives, and therefore,

21   this case now concerns one claimant, KB, against one defendant,

22   Amerisure.  That's it.

23             Therefore, that extremely narrow scope does not, in my

24   view, give you carte blanche privilege to obtain information

25   about processes other than those relating to KB.  Similarly, it

1    doesn't give you the right to obtain information about other

2    potential exemplar representatives, because that would have to

3    be in a separate lawsuit.

4         This lawsuit is razor thin, sir, at this point --

5    discovery concerning KB against this one particular defendant.

6         So you may disagree with me, Mr. Zincone, and that's

7    fine.  If you do disagree, it seems to me the fundamental

8    underpinning is the disagreement with Judge Altonaga's ruling,

9    because I'm simply following that ruling.  That is my world.  I

10   have to comply with the orders that have been entered.

11        If you can convince Judge Altonaga to change her mind

12   on the scope of this case, I'm happy to revisit the issue.  But

13   for right now that is my universe.  It is a very small

14   universe.

15        So based on that overall perspective, do you think

16   that we need to go through each and every one of the 30(b)(6)

17   topics, each and every one of the interrogatories, each and

18   every one of the requests for production, or do you have a

19   sufficient feel for my view to resolve these matters on your

20   own?

21        MR. ZINCONE:  I think, your Honor -- this is Francesco

22   Zincone again on behalf of the plaintiff -- I think that that

23   really is the ruling.  I think that what you have stated on the

24   record or what you intend to put into a written order is likely

25   sufficient.  It appears to me to serve as an adjudication with

1    respect to the objections that have been raised because many of

2    them track similar language to what you are talking about.

3    They all raise questions as to whether or not we are entitled

4    to information beyond the file pertaining to KB.

5           So I don't necessarily think that it is necessary to

6    go through each individual request or interrogatory and

7    30(b)(6) topic.  I think that your Honor is basically positing

8    to issue an omnibus order with respect to the objections and to

9    make that ruling that you just described.  To the extent that I

10   need to seek clarification or wish to bring the issue up to

11   Judge Altonaga, I think that that ruling is sufficient for me

12   to do so.

13          I appreciate your Honor's take on things,

14   understanding that we disagree as to the way the ruling should

15   be or Judge Altonaga's ruling should be read and how our

16   complaint should be interpreted, but we can take that up

17   another day.  My understanding right now is that the court is

18   ruling that this case is about KB and KB only, and as a result

19   no other rights are being adjudicated in the matter and that is

20   the only thing that is up for discovery.

21          THE COURT:  Generally correct.  I would slightly

22   rephrase your summary.  That is not my ruling.  I am simply

23   following Judge Altonaga's ruling and, therefore, that is my

24   approach in the case.

25          I do note that Ms. McAllister indicated that Amerisure

1    will in fact produce a witness, a 30(b)(6) witness for issues

2    concerning the KB claim, if you want to take that 30(b)(6)

3    deposition.

4         Do you have a feel yet about whether you are going to

5    move forward on the 30(b)(6) deposition limited to the KB

6    claim?

7         MR. ZINCONE:  I think that your Honor's point was that

8    the only thing relevant in terms of policies currently, in

9    light of Judge Altonaga's order, would be policies as relate to

10   the KB file.  So, yes, I think that we could go forward with

11   that deposition.  I anticipate that we will.  So yes, I do

12   think that it is something that we will probably, that we will

13   likely pursue at this stage because there are questions with

14   respect to that claim.

15        THE COURT:  Sure.  But based on what I have heard so

16   far, it sounds to me -- Ms. McAllister, you will correct me if

17   I'm wrong -- it sounds to me that a 30(b)(6) topic of policies

18   surrounding the KB claim, if that were the topic, Amerisure

19   would produce a representative who basically would say, listen,

20   this was never recorded because it didn't have to be; this is a

21   third-party slip and fall; Amerisure never settled the

22   underlying claim, therefore, we didn't need to do anything; and

23   to the extent that there is a policy saying if we didn't do

24   anything, we don't need to report, then that is going to be

25   maybe a seven-minute deposition on that very limited topic.

1   That is how I envision this.

2           Do you perceive it as unfolding in some other way?

3           MR. ZINCONE:  It is likely to unfold in that manner.

4   So I will discuss with my client as to whether or not it moves

5   forward.

6           THE COURT:  Sure.  My suggestion is, if you are going

7   to pursue a 30(b)(6) deposition, it would make sense to issue

8   an amended notice because the list of topics will be

9   substantially reduced and narrowed.  Hopefully you will phrase

10  that in a way which is consistent with Judge Altonaga's ruling

11  and my decision to follow it for discovery purposes, and then

12  you won't have any further disputes about the 30(b)(6)

13  deposition or the interrogatories or the requests for

14  production.  If you do, just schedule another discovery hearing

15  with me, but I think it would be a fairly succinct,

16  to-the-point type of a hearing.

17          MR. ZINCONE:  Understood.

18          THE COURT:  All right.  Ms. McKenna, I forgot to ask

19  where you're Zooming in from.

20          MS. MCKENNA:  From Coral Springs, Florida, your Honor.

21  Not too far.

22          THE COURT:  You are probably at about the same

23  temperature as me here.

24          MS. MCKENNA:  Yes.

25          THE COURT:  For my 65th birthday my family got me one

1   of these fancy schmancy iWatches, and it says here that it is

2   79 degrees right now.  I don't know if that is accurate or not.

3   That is what it says.

4          MS. MCKENNA:  Yes.  Oddly enough, Lancing, Michigan,

5   may be warmer today than us down here in South Florida with the

6   wind down here.

7          THE COURT:  Ms. McAllister, is Lancing in the upper

8   peninsula?

9          MS. MCALLISTER:  No, your Honor.  We are in the middle

10  of the lower peninsula.  So using our infamous mitten, we are

11  pretty much in the middle of the state.

12         THE COURT:  So how far from Ann Arbor?

13         MS. MCALLISTER:  About an hour.

14         THE COURT:  I see.  All right.  Very good.

15         So we will issue a post-hearing administrative order,

16  post-hearing omnibus administrative order concerning these

17  discovery disputes, just succinctly outlining in writing the

18  comments that I made today.

19         Can I help you folks out with anything else this

20  morning?

21         MR. ZINCONE:  No.  I think that was helpful, your

22  Honor.  Thank you.  I appreciate it.

23         THE COURT:  Now, Mr. Zincone, I'm looking at your

24  window and there are some people on the landing, on the balcony

25  behind you.  So that is probably across the alleyway from you.

```
 1              MR. ZINCONE:  That's right.

 2              THE COURT:  So that tells me you are either in the

 3    Brickell area or the midtown area, perhaps.

 4              MR. ZINCONE:  I'm actually in the Gables, your Honor.

 5              THE COURT:  In the Gables.

 6              MR. ZINCONE:  That's right.

 7              THE COURT:  What is the name of the building that

 8    you're in?

 9              MR. ZINCONE:  This is the Bacardi building.

10              THE COURT:  Is that your home or your office?

11              MR. ZINCONE:  Office.  I am at an office space.  So

12    this abuts Le Jeune.

13              THE COURT:  I see.  So that building behind you

14    through the window is an apartment building?

15              MR. ZINCONE:  It is an apartment building.

16              THE COURT:  So you are at Le Jeune and what street?

17              MR. ZINCONE:  Sevilla.

18              THE COURT:  Sevilla.

19              MR. ZINCONE:  Yes.

20              THE COURT:  Is that north of Coral Way?

21              MR. ZINCONE:  That is north of Coral Way.  North of

22    Coral Way.

23              I am getting a consultation from my navigator over

24    here.

25              THE COURT:  All right.  In other words, you just drive
```

1   to the office; you don't necessarily know what streets you're

2   turning at.

3           MR. ZINCONE:  I'm on auto pilot to get here, your

4   Honor.  It is probably not good.  I should be more aware.

5           THE COURT:  I understand.

6           All right, folks.  We will be in recess.  Take care.

7           (Adjourned)

C E R T I F I C A T E

          I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


June 24, 2021              s/ Joanne Mancari
                           Joanne Mancari, RPR, CRR, CSR
                           Court Reporter
                           jemancari@gmail.com